IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| U.S. Commodity Futures Trading Commission,<br><br>PLAINTIFF<br><br>v.<br><br>Robert S. Leben and Amy L. Leben,<br><br>DEFENDANTS | Case No. 3:14-cv-866-TLW<br><br><br>**ORDER** |

This matter comes before the Court on Plaintiff U.S. Commodity Futures Trading Commission's (CFTC) motion for summary judgment, ECF No. 25, and Defendants Robert and Amy Leben's cross-motion for summary judgment, ECF No. 33. After careful consideration of the applicable law, the evidence submitted by the parties, and the conduct to which Robert Leben pled guilty in a related criminal case, the CFTC's motion is granted and the Lebens' cross-motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2014, the CFTC filed this lawsuit seeking a permanent injunction, civil monetary penalty, restitution, and disgorgement of funds against the Lebens based on their operation of a Ponzi scheme that defrauded twelve investors of more than $2,000,000. ECF No. 1. Specifically, the CFTC alleges the Lebens, through their company Structured Finance Group (SFG), ran a fraudulent commodity pool in violation of certain provisions of the Commodity Exchange Act (CEA) 7 U.S.C. §§ 1 *et seq.*, and certain CFTC Regulations found at 17 C.F.R. §§ 1.1 *et seq*. *Id*.

At the outset of the proceedings, the Court granted the CFTC's motion for a temporary restraining order and, thereafter, granted the parties' consent motion for a preliminary injunction.

ECF Nos. 9, 15.  These Orders prohibited the Lebens from, *inter alia*, trading or soliciting funds to be traded on the commodity exchange.  *Id*.

In December 2014, the CFTC moved for summary judgment and a permanent injunction. ECF No. 25.  In support of its motion, the CFTC submitted sixty-one exhibits consisting of a declaration from the special agent who investigated this matter, deposition transcripts, investment contracts between the Lebens and investors ("Letter Agreements"), emails, and bank records that were collected during discovery.  ECF Nos. 25-1 through 25-61.  In response to this motion, the Lebens filed two affidavits that purport to create factual questions that would preclude granting summary judgment to the CFTC.[1]  ECF No. 30-1.  The Lebens also asserted they were not subject to the provisions of the CEA because they were not actually running a commodity pool, and they sought summary judgment on this ground.  ECF No. 33.  The parties briefed these matters.  ECF Nos. 27, 30, 32, 34, 35, and 38.  The parties jointly sought to stay the case pending the resolution of these motions, and the Court granted this request.  ECF Nos. 29, 31.

On December 16, 2014, Robert Leben was indicted on fifteen counts of wire fraud under

---

[1] The Court notes that Robert Leben's "affidavit" is neither sworn under the penalty of perjury nor countersigned by the notary public named on the document.  Moreover, Robert Leben subsequently contradicted many of the assertions made in the "affidavit" when he pled guilty in a criminal case arising from the same fraudulent conduct that gives rise to this case, discussed *infra*. The Court also notes the Lebens filed an affidavit signed by their agent who solicited investors, Robert Semisch.  ECF No. 30-2.  Mr. Semisch essentially attests that although the Letter Agreements between SFG investors expressly state the "principal was secured for the full term," ECF No. 30-3, the investors "understood" and were "aware" that their returns were actually based on "best efforts."  ECF No. 30-2 at ¶¶ 4-8.  Information concerning the investors' understanding and awareness is beyond personal knowledge of Mr. Semisch and, therefore, constitutes inadmissible hearsay when presented in this form.  *See* Fed. R. Evid. 802.  Moreover, Robert Leben directly contradicted Mr. Semisch's assertions when he admitted in the criminal matter that he "guaranteed the investors' principal" through the Letter Agreements.  ECF No. 42-3 at ¶ 3(B). Therefore, Mr. Semisch's affidavit fails to create a genuine question concerning the contractual promises made by the Lebens to investors, and fails to create a genuine dispute concerning the material facts asserted by the CFTC.

2

the caption *United States v. Robert S. Leben*, No. 3:14-cr-00858-MGL (D.S.C.). ECF No. 42-1 (criminal indictment). Because the same conduct gives rise to both this case and the criminal case, this Court withheld ruling on the motions for summary judgment pending the resolution of the criminal case.

On October, 8, 2015, Robert Leben pled guilty to an information charging him with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343.[2] ECF No. 42-2 (plea agreement); ECF No. 42-3 (criminal information).

By entering a guilty plea, Robert Leben admitted to the following facts contained in the criminal information. Robert Leben and others[3] used interstate wire communications to defraud investors for their own personal enrichment September 2008 through October 2015. ECF No. 42-3 at ¶ 2 (criminal information). Robert Leben, through SFG, held himself out as someone who invested on behalf of other people in AAA-rated U.S. Treasury debt obligations and commodities. *Id.* at ¶ 3(A). Robert Leben agreed to pay investors a rate of return of 8% to l6% a year, while guaranteeing the investors' principal by investing a portion in Treasury debt obligations. *Id.* at ¶ 3(B). The transactions were memorialized in Letter Agreements between SFG and investors. *Id.*

---

[2] The remaining counts of the indictment were dismissed as a result of Robert Leben's guilty plea.

[3] Though the criminal information does not name Robert Leben's co-conspirators, the uncontested evidence of record shows that he and Amy Leben jointly engaged in the fraudulent conduct that gives rise to this action through their operation of SFG. Through his guilty plea, Robert Leben admitted the fraud was committed through SFG. ECF No. 42-3 at ¶ 3(A). Amy Leben testified during her deposition that she was the sole owner of SFG and that she authorized Robert Leben to run the company. ECF No. 25-5 at 6. In his deposition, Robert Leben confirmed that Amy Leben was SFG's President, Vice President, Treasurer, and Secretary, and that they operated SFG out of their house. ECF No. 25-2 at 21-22. Further, Amy Leben admitted that she was the sole signatory on the Merrill Lynch and Bank of America accounts that Robert Leben admitted were used to divert the investor's funds. ECF No. 25-5 at 13; ECF No. 42-3 at ¶ 3(C). In light of these facts, and the additional evidence amassed by the CFTC, there is no basis to find a genuine issue of fact that both Robert and Amy Leben engaged in the fraudulent conduct at issue here.

Rather than invest the money into AAA-rated U.S. Treasury debt obligations in the form of T-STRIPS, as promised, Robert Leben and others diverted the money for their own use through accounts at Merrill Lynch and Bank of America. *Id.* at ¶ 3(C). The money was used to purchase a house, vacations, a pool, an irrigation system, a car, cosmetic surgery, to provide funds to family members, and to pay everyday living expenses. *Id.* Robert Leben diverted at least $2,000,000 in investor funds to his own use, representing to investors that the money would be used to purchase AAA-rated U.S. Treasury debt obligations and commodities. *Id.* at ¶ 3(D). Robert Leben admitted to sending an interstate fax on May 9, 2011, and an interstate email on August 11, 2011, concerning funds that SFG was supposed to invest but did not. *Id.* at ¶ 4.

On December 16, 2015, this Court held a status conference to address the impact of the guilty plea on this case. ECF No. 39. The Court inquired as to the parties' intent regarding the pending cross-motions for summary judgment. Based on the parties' responses, the Court directed the parties to file supplemental briefs after Robert Leben was sentenced.

On April 14, 2016, Robert Leben was sentenced to forty months in federal custody followed by three years of supervised release.[4] ECF No. 42-6. Additionally, he was ordered to pay restitution in the amount of $1,814,407.14, and he agreed to a forfeiture in the amount of $2,000,000. *Id.*

On April 25, 2016, the CFTC filed a supplemental brief asserting that Robert Leben

---

[4] Although Robert Leben was afforded the privilege of a delayed report date to begin serving his sentence, Judge Lewis revoked his post-conviction bond because he failed to timely self-report to his assigned facility as ordered. *See* ECF No. 93 (in the criminal case).

admitted the material facts that give rise to this case when he pled guilty to the criminal information.[5]  ECF No. 42.  Neither Robert Leben nor Amy Leben supplemented their briefing or contested the CFTC's assertion, and the time to do so has now expired.  *See* ECF No. 41.

On June 3, 2016, this Court lifted the stay on this case.  ECF No. 43.  The pending motions are now ripe for disposition.

## LEGAL STANDARD

**Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law."  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks omitted).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant must identify

---

[5] In the CFTC's supplemental brief, it asserts that Robert Leben is precluded from relitigating the issues and facts regarding the fraudulent conduct in this case because the elements of collateral estoppel are present in light of his admissions in the criminal matter. ECF No. 42 at 3-7. As noted, the Lebens did not respond to contest this argument. After carefully reviewing the authorities cited, the motions and memoranda from this case, and the relevant documents from the criminal matter, the Court agrees that Robert Leben is precluded from relitigating the facts and issues he admitted when he pled guilty because the elements of collateral estoppel are present here. *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (naming elements of collateral estoppel); *SEC v. Farkas*, 557 F. App'x 204, 206 (4th Cir. 2014) (guilty verdict in criminal securities fraud case collaterally estopped defendant from denying liability for civil securities fraud); *Williams v. Comm'r of Internal Revenue*, 498 F. App'x 284, 291 n. 6 (4th Cir. 2012) (guilty plea in criminal tax evasion case had same conclusive effect as trial for purposes of collateral estoppel in civil tax fraud case).

"those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (internal quotation marks omitted). The nonmoving party must then produce specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, the Court construes all facts and reasonable inferences arising therefrom in the light most favorable to the nonmoving party. *Judd*, 718 F.3d at 312-13.

## DISCUSSION

In light of the standards set forth above, the Court has carefully considered the legal authorities governing this matter and the evidence of record. When construing all facts and reasonable inferences arising therefrom in the light most favorable to the nonmoving party as required at this stage, the Court finds that the Lebens have presented insufficient evidence to contradict the substantial evidence submitted by the CFTC. Moreover, as explained, Robert Leben has now admitted to the fraudulent conduct that gives rise to this case by virtue of his guilty plea. Therefore, the Court concludes that there is no genuine dispute as to any material fact and that the CFTC is entitled to judgment as a matter of law on each violation alleged.

### I.    Violations of the CEA and CFTC Regulations

In its supplemental brief, the CFTC asserts that Robert Leben's admissions are sufficient to show that he violated CEA §§ 6b(a)(1)(A)-(C), 6o(1)(A) and (B), and 9(1), and 17 C.F.R. § 180.1(a)(1)-(3). ECF No. 42 at 7. Additionally, the CFTC asserts that summary judgment should be entered against Robert Leben on the remaining count against him—violation of CEA §§ 6m(1)—for his failure to register as a commodity pool operator, and against Amy Leben on all counts alleged, for the reasons set forth in its original motion and supporting memoranda. As

noted, the Lebens failed to contest the CFTC's analysis concerning these violations in light of Robert Leben's guilty plea. The Court addresses each violation in turn below.

### a. CEA § 6b(a)(1)(A)-(C)

Under the CEA, it is unlawful for any person to (A) cheat or defraud or attempt to cheat or defraud another person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever, in connection with any futures transaction. CEA §§ 6b(a)(1)(A)-(C).

The evidence supports that the Lebens' misappropriation of pool participants' funds violated §§ 6b(a)(1)(A) and (C). *See CFTC v. Noble Wealth Data Info. Servs., Inc.*, 90 F. Supp. 2d 676, 687 (D. Md. 2000), *aff'd in relevant part sub nom.*, *CFTC v. Baragosh*, 278 F.3d 319 (4th Cir. 2002) (defendant violated CEA § 6b by diverting investor funds for operating expenses and personal use). By way of his guilty plea, Robert Leben admitted that SFG misappropriated at least $2,000,000 in investor funds for the his personal use, while representing to investors that the money would be used to purchase AAA-rated U.S. Treasury debt obligations and commodities.[6] ECF No. 42-3 at ¶ 3(D). Instead, he used the money to purchase a house, vacations, a pool, an irrigation system, a car, cosmetic surgery, to provide funds to family members, and to pay everyday living expenses. *Id*. at ¶ 3(C). Therefore, the Court concludes that the Lebens violated §§ 6b(a)(1)(A) and (C) by misappropriating at least $2,000,000 in investor funds for their personal use while representing to investors that the money would be used by SFG to purchase U.S. Treasury debt obligations and commodities.

---

[6] As noted, the uncontradicted evidence of record shows this conduct is attributable to both Robert and Amy Leben because the fraudulent acts were committed through SFG, the company they jointly ran out of their house.

Robert Leben's admissions in the criminal case also show that the Lebens violated § 6b(a)(1)(B). Delivering, or causing the delivery of, false statements or reports to pool participants relating to transactions regulated by the CFTC constitutes a violation of CEA § 6b(a)(1)(B). *See, e.g., CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1108 (C.D. Cal. 2003) (finding that false and misleading statements as to amount and location of investor money violated CEA §§ 6b); *Noble Wealth Data Info. Servs.*, 90 F. Supp. 2d at 687. Robert Leben admitted that SFG distributed Letter Agreements between SFG and investors wherein it agreed to pay investors a rate of return of 8% to l6% a year, while guaranteeing the investors' principal by investing a portion in Treasury debt obligations. ECF No. 42-3 at ¶ 3(B). As explained, these representations were false. Further, these misrepresentations and omissions were material in that a reasonable pool participant would want to know, among other things, the security of their principal investment and the annual returns that were promised. Therefore, the Court concludes that the Lebens violated § 6b(a)(1)(B) by distributing fraudulent and false material statements to investors.

### b. CEA § 9(1) and CFTC Regulation 180.1(a)(1)-(3)

It is unlawful for any person, directly or indirectly, to use or employ any deceptive device or contrivance in connection with, among other things, a futures contract. CEA § 9(1). In addition, 17 C.F.R. §180.1(a)(1)-(3) prohibits any person from intentionally or recklessly (1) using or attempting to use any manipulative device, scheme or artifice to defraud; (2) making any untrue or misleading statement or omission of material fact; and (3) engaging or attempting to engage in any act or practice which operates as a fraud or deceit on any person.

As stated, the Lebens misappropriated at least $2,000,000 in investor funds to personal use. ECF No. 42-3 at ¶ 3(D). Additionally, they distributed Letter Agreements between SFG and investors wherein they agreed to pay investors a rate of return of 8% to l6% a year, while

8

guaranteeing the investors' principal by investing a portion in Treasury debt obligations. ECF No. 42-3 at ¶ 3(B).

The misappropriation of funds and issuance of false information concerning investors' accounts constitute violations of CEA § 9(1) and 17 C.F.R. §180.1(a)(1)-(3). *See CFTC v. Global Precious Metals Trading Co,. LLC*, 2013 WL 5212237, at *5 (S.D. Fla. Sept. 12, 2013) (defendant violated CEA § 9(1) and 17 C.F.R. § 180.1(a) by misappropriating funds and making misrepresentations); *CFTC v. Smithers*, 2013 WL 4851684, at *8 (S.D. Fla. July 31, 2013) (same). Therefore, the Court concludes that the Lebens violated these provisions as well.

### c. CEA §§ 6o(1)(A) and (B)

The CEA defines a Commodity Pool Operator (CPO) as any person who is:

engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including any—
(I) commodity for future delivery, security futures product, or swap;
(II) agreement, contract, or transaction described in section 2(c)(2)(C)(i) of this title or section 2(c)(2)(D)(i) of this title;
(III) commodity option authorized under section 6c of this title; or
(IV) leverage transaction authorized under section 23 of this title.

CEA § 1a(11)(i). Pursuant to CEA §§ 6o(1)(A) and (B), it is unlawful for a CPO to use the mails or any other means of interstate commerce to (i) employ any device, scheme or artifice to defraud any pool participant or prospective pool participant; or (ii) engage in any transaction, practice or course of business that operates as a fraud or deceit upon any pool participant or prospective pool participant.

The Lebens acted as CPOs by soliciting and accepting funds from investors who were promised their funds would be invested in AAA-rated U.S. Treasury debt obligations and commodities. ECF No. 42-3 at ¶¶ 3(A)-(D). As explained, the Lebens [in their role as CPOs]

9

used interstate wire communications to defraud investors of at least $2,000,000 for their own personal enrichment. ECF No. 42-3 at ¶ 2. Therefore, the Court concludes that the Lebens violated the CEA §§ 6o(1)(A) and (B).

### d. CEA § 6m(1)

Pursuant to CEA § 6m(1), it is unlawful for any CPO, unless registered, to make use of the mails or any means or instrumentality of interstate commerce in connection with its business. As observed, the Lebens acted as CPOs and sent faxes and emails engaging in interstate commerce. ECF No. 42-3 at ¶¶ 3(A)-(D). Additionally, the Lebens admitted SFG was not registered with the CFTC. ECF No. 17 at ¶ 13 (Lebens' Answer). Therefore, the Court concludes that the Lebens violated CEA § 6m(1).

### e. CFTC Regulation 4.20(b) and (c) (Amy Leben only)

Pursuant to 17 C.F.R. § 4.20(b), all funds received by a CPO from a pool participant must be accepted in the name of the pool, and the CPO may not accept funds in its own name. Under 17 C.F.R. § 4.20(c), commodity pool funds may not be commingled with the funds of the CPO or any other person.

CFTC Investigator Michael Loconte submitted a declaration concerning his investigation of the Lebens' scheme. ECF No. 25-1. He found that during the relevant period, Amy Leben received funds from pool participants in accounts in her name. *Id*. at ¶ 8 (Laconte Decl.). Investigator Loconte also uncovered that SFG accepted funds from pool participants and transferred these funds to accounts owned or controlled by Amy Leben. *Id*. at ¶ 9.

Additionally, Robert Leben admitted through his guilty plea that he "diverted money for their [Robert and Amy Leben's] own use through accounts at Merrill Lynch and Bank of America," ECF No. 42-3 at ¶ 3(C), and Amy Leben admitted during her deposition she was the sole signatory

on these accounts, ECF No. 25-5 at 13. Therefore, the pool investor's funds were commingled with the Leben's funds in violation of 17 C.F.R. §§ 4.20(b) and (c).

### f. Vicarious Liability for the Acts of the Lebens' Agents

In its motion for summary judgment, the CFTC asserts that the Lebens are liable for the acts of others, including Gary Bohlke and Robert Semisch, because they were agents of the Lebens in the course of the Ponzi scheme. ECF No. 25 at 30-31. The Lebens neither contested these relationships, nor have they introduced sufficient evidence to create a genuine question on this issue.

Both the CEA and CFTC Regulations allow that a principal is vicariously liable for the acts or omissions of his agent. CEA § 2(a)(1)(B) (stating that an "act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his or her employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person"); 17 C.F.R. § 1.2 (same).

The acts of the Lebens' agents occurred within the course and scope of their agency. Robert Leben testified during his deposition that Bohlke only disbursed funds at his direction and instruction. ECF No. 25-2 at 28. Likewise, Semisch referred his clients to SFG and communicated the details of the "investment" on its behalf. ECF No. 25-2 at 32-33; ECF No. 25-7 at 28-29. Thus, Bohlke and Semisch acted as agents for the Lebens' Ponzi scheme and, therefore, the Lebens are liable as principals for their conduct pursuant to CEA § 2(a)(1)(B) and 17 C.F.R. § 1.2.

In sum, when the facts and reasonable inferences arising therefrom are viewed in the light most favorable to the Lebens, there is no genuine dispute as to any material fact and the CFTC is entitled to judgment as a matter of law on each count alleged.

## II.  Relief Requested

Having concluded the Lebens are liable for the violations asserted, the Court now turns to the relief requested by the CFTC. For the reasons set forth below, the Court awards the requested permanent injunction, civil monetary penalty, restitution, and disgorgement of funds.

### a.  Permanent Injunction

The CFTC seeks to permanently enjoin the Lebens from trading or registering to trade commodities. ECF No. 25 at 37-39. As noted, the Lebens consented to a *temporary* injunction of this same activity out the outset of these proceedings. ECF No. 15. However, they argue that a *permanent* trading ban would be "self-defeating" in that it would not allow them to repay any restitution, disgorgement, or civil penalty that may result from this lawsuit. ECF No. 30 at 10. The Lebens' argument is unavailing.

"Upon a proper showing, a permanent . . . injunction . . . shall be granted without bond." CEA § 13a-1(b). In order to obtain a permanent injunction, the CFTC must show that a violation of the CEA and CFTC Regulations occurred, and that there is some reasonable likelihood of future violations. *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979) (citing *SEC v. Advance Growth Capital Corp.*, 470 F.2d 40, 54 (7th Cir. 1972)). Further, past misconduct is "highly suggestive" of future misconduct. *See id.* (citing *CFTC v. Muller,* 570 F.2d 1296, 1300 (5th Cir. 1978)). Unlike private injunctive actions, which are rooted in the equity jurisdiction of the federal courts, a CFTC enforcement action seeking injunctive relief is a creature of statute. As a result, restrictive concepts ordinarily associated with private injunctive actions, such as proof of irreparable injury or inadequacy of other remedies, are inapplicable. *See CFTC v. Smith*, 2012 WL 1642200, at *12 (W.D. Va. 2012) (citing *Muller*, 570 F.2d at 1300).

The evidence of record shows that the Lebens would pose a significant threat to the

integrity of the futures markets if they are allowed to trade in these markets in the future. When he pled guilty, Robert Leben admitted that he, through his wife's company SFG, orchestrated a multi-year, multi-million dollar Ponzi scheme that defrauded at least eleven individuals and misappropriated at least $2,000,000 of "invested" funds for their own, personal use. This criminal conduct landed Robert Leben in federal custody for his admitted violations of 18 U.S.C. § 1343. Based on the complexity and continuous nature of this criminal enterprise, there is at least a reasonable likelihood the Lebens would commit future violations if they were allowed to again trade in the commodities markets.

Because the Lebens violated the CEA and CFTC Regulations and the likelihood that they will violate these provisions again, the Court concludes it is appropriate to enter a permanent injunction and trading and registration bans. Accordingly, this Court enters a permanent injunction restraining Robert and Amy Leben and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them from, directly or indirectly:

    1)    violating Section 4b(a)(2)(A)-(C) of the Act, CEA § 6b(a)(2)(A)-(C) (2012); Section 4o(1) of the Act, CEA § 6o(1) (2012); and Section 4c(b) of the Act, CEA § 6c(b); and Regulations 4.21, 4k(2), and 4m(1), 17 C.F.R. §§ 4.21, 4k(2), & 4m(1) (2014);

    2)    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, as amended), CEA § 1a(40) (2012);

    3)    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in CFTC Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2014)) (commodity options), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, CEA §

13

2(c)(2)(B) and 2(c)(2)(C)(i)) (2012) (forex contracts), for their own personal account or for any account in which they have a direct or indirect interest;

   4)  having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

   5)  controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products and/or forex contracts;

   6)  soliciting, receiving, or accepting any funds from any person for purposes of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products and/or forex contracts;

   7)  applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

   8)  acting as a principal (as that term is defined in Regulation 3.1(a) , 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, CEA § 1a)  registered, exempted from registration or required to be registered with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

  **b. Civil Monetary Penalty**

Citing several other cases where penalties were enforced, the CFTC seeks the imposition of a civil monetary penalty in the amount of $7,654,788, which, it asserts, represents three times

the Lebens' monetary gains from the fraud, $2,551,596. ECF No. 25 at 40-41. The Lebens respond that such a monetary penalty is "beyond the scope of reasonableness" and violates the Leben's due process rights. ECF No. 30 at 10. The Lebens cite no authority for their position, nor do they offer any persuasive argument on this issue.

Under the CEA, "the [CFTC] may seek and the Court shall have jurisdiction to impose . . . on any person found in the action to have committed any violation, a civil penalty in the amount of not more than the higher of $100,000 or triple the monetary gain to the person for each violation." CEA § 13a-1(d)(1). Because enforcement proceedings under CEA § 13a-1(d)(1) involve the public interest rather than a private controversy, the equitable jurisdiction of the district court is very broad. *CFTC v. Capitalstreet Fin., LLC*, 2012 WL 79758, at *12 (W.D.N.C. Jan. 11, 2012) (citing *Hunt*, 591 F.2d at 1223). "In determining how extensive the fine for violations of the [CEA] ought to be, courts and the [CFTC] have focused upon the nature of the violations." *Noble Wealth Data Info. Servs.,* 90 F. Supp. 2d at 694. District courts in the Fourth Circuit have issued civil monetary penalties representing triple the monetary gain to a defendant in comparable cases. *See e.g., Smith*, 2012 WL 1642200, at *15; *CFTC v. Hayes*, 2007 WL 858772, at *5 (E.D. Va. Mar. 13, 2007).

In this case a civil monetary penalty is appropriate in order to deter future misconduct. As observed, the Lebens' misappropriated a significant amount of funds from members of the general public over a period of six years. When he pled guilty, Robert Leben admitted that SFG diverted at least $2,000,000 of other peoples' money for his own use. ECF No. 42-3 at ¶ 3(D). Moreover, the Lebens have offered no persuasive argument for reducing the amount of the penalty requested by the CFTC. Under these circumstances, the Court concludes it is appropriate to impose a civil monetary penalty in the amount of $7,654,788, which represents three times the Lebens' monetary

gains from this fraudulent scheme pursuant to CEA § 13a-1(d)(1).

### c. Restitution

The CFTC seeks restitution in the amount of $2,551,596 which, it asserts, represents the total amount solicited from investors ($3,762,873) less the funds returned during the operation of the Ponzi scheme ($1,211,277). ECF No. 25 at 40. The Lebens have introduced no evidence to contradict these facts.

Under the CEA, "the [CFTC] may seek and the court shall have jurisdiction to impose . . . restitution to persons who have sustained losses proximately caused by such violations (in the amount of such losses). . . ." CEA § 13a-1(d)(3)(A). The Fourth Circuit has held that courts of equity have the authority to order restitution. *See United States v. Long*, 537 F.2d 1151, 1152 (4th Cir. 1975). The proper amount of restitution is determined by calculating the total amount of funds solicited from victims of the fraud by a defendant, less any funds returned to the victims by defendant. *See Long*, 537 F.2d at 1153 (restitution consists of restoring injured party "to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money").

As explained above, the total restitution here amounts to $2,551,596. Thus, pursuant to CEA § 13a-1(d)(3)(A) and the authorities cited, the Lebens are hereby ordered to pay, jointly and severally, restitution in the amount of $2,551,596.[7]

---

[7] The Court notes that in the criminal matter Robert Leben was ordered to pay restitution in the total amount of $1,814,407.14 for the same losses identified in this case (consisting of $2,551,596 less a credit for certain property transferred to a victim in lieu of restitution). ECF No. 42-6 at 4. To the extent the ordered restitution overlaps in these cases, payments or credits in the criminal case should be applied to the restitution ordered in this case as well.

16

### d. Disgorgement

The CEA states "the [CFTC] may seek and the court may impose . . . disgorgement of gains received in connection with such violations." CEA § 13a-1(d)(3)(B); *see also CFTC v. Kimberlyn Creek Ranch*, 276 F.3d 187, 191-92 (4th Cir. 2002). The CFTC seeks to disgorge the Lebens of the total profits they earned from trading futures with funds that were solicited fraudulently, approximately $109,787. ECF No. 25 at 40. The Lebens have not offered any reason why disgorgement is not proper and, in fact, Robert Leben admitted that "SFG made substantial profits in excess of $109,787."[8] ECF No. 30-1 at ¶ 13. Under these circumstances, the Court concludes it is appropriate to order the disgorgement of the profits the Lebens earned through this scheme which, based on the evidence in the record, total conservatively $109,787.00.

## III.    Robert and Amy Leben's Motion for Summary Judgment

In response to the CFTC's motion for summary judgment, the Lebens contend they are not subject to the provisions of the CEA because they were not operating a commodity pool. ECF No. 33 at 11-13. The sole evidentiary support cited for this contention comes from Robert Leben's "affidavit." *Id*. at 13. As discussed, this document was not sworn under the penalty of perjury and, moreover, Robert Leben has now admitted to conduct in the criminal case that substantially contradicts his prior assertions made in the "affidavit." Thus, the Court does not find the assertions made in this "affidavit" to constitute credible evidence.

The evidence shows that the Lebens acted, or at least purported to act, as commodity pool

---

[8] Additionally, in the criminal matter, Robert Leben agreed to forfeit his interest in money obtained directly or indirectly through his criminal conduct, a minimum of approximately $2,000,000. ECF No. 42-3 at 4. He further agreed that the Government may recover this amount through the forfeiture of substitute assets, including the property located at 118 Peninsula Way, Columbia, South Carolina 29229, titled in the names of Robert Leben and Amy Leben. ECF No. 42-5 at 3

operators as evidenced by Robert Leben's admission in the criminal case that SFG solicited and accepted funds from investors who were promised their funds would be invested in AAA-rated U.S. Treasury debt obligations and commodities. *See* ECF No. 42-3 at ¶¶ 3(A)-(D). The Lebens cannot avoid being subject to the CEA on the basis that their "investment business" was actually a Ponzi scheme disguised as a commodity pool. The Lebens have failed to advance a persuasive argument or offer sufficient evidentiary support for their assertion that the CEA should not apply to them and, conversely, the CFTC explained why the Act applies in its reply brief. ECF No. 34 at 6-10.

Accordingly, the Lebens have failed to show they are entitled to summary judgment on this issue and their motion for summary judgment is denied.

## **CONCLUSION**

When Robert Leben pled guilty in a criminal case arising from the same conduct, he admitted the material facts alleged by the CFTC in this case. The Lebens made no effort to explain why his guilty plea should not be deemed an admission of the fraudulent conduct alleged here. Furthermore, even before his plea was entered, the CFTC amassed a wealth of evidence against the Lebens that remains uncontroverted. Robert Leben's plea validates this evidence.

For the reasons set forth herein, the Court concludes there is no genuine dispute as to any material fact and the CFTC is entitled to judgment as a matter of law. Accordingly, the Lebens' motion for summary judgment, ECF No. 33, is DENIED, and the CFTC's motion for summary judgment, ECF No. 25, is GRANTED. The Lebens are hereby: (1) ordered to pay a civil monetary penalty in the amount of $7,654,788; (2) ordered to pay restitution in the amount of $2,551,596; and (3) disgorged of the profits earned from their fraudulent scheme in the amount of $109,787. Additionally, the Lebens are hereby permanently enjoined from the conduct articulated in this

Order, to wit:

 1) violating Section 4b(a)(2)(A)-(C) of the Act, CEA § 6b(a)(2)(A)-(C) (2012); Section 4o(1) of the Act, CEA § 6o(1) (2012); and Section 4c(b) of the Act, CEA § 6c(b); and Regulations 4.21, 4k(2), and 4m(1), 17 C.F.R. §§ 4.21, 4k(2), & 4m(1) (2014);

 2) trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, as amended), CEA § 1a(40) (2012);

 3) entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in CFTC Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2014)) (commodity options), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, CEA § 2(c)(2)(B) and 2(c)(2)(C)(i)) (2012) (forex contracts), for their own personal account or for any account in which they have a direct or indirect interest;

 4) having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

 5) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products and/or forex contracts;

 6) soliciting, receiving, or accepting any funds from any person for purposes of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products and/or forex contracts;

 7) applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)

(2014); and/or

8) acting as a principal (as that term is defined in Regulation 3.1(a) , 17 C.F.R. § 3.1(a) (2014)), agent or any other officer or employee of any person (as that term is defined in Section 1a of the Act, as amended, CEA § 1a)  registered, exempted from registration or required to be registered with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

**IT IS SO ORDERED**.

*s/ Terry L. Wooten*
Chief United States District Judge

August 5, 2016
Columbia, South Carolina